**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
-------------------------------x
EDWARD S. FISHMAN              :
                              :
         Plaintiff,           :   Civ. No. 04-749 (DRD)
      v.                      :
                              :
LA-Z-BOY FURNITURE GALLERIES  :
OF PARAMUS, INC., a corporation, :
LA-Z-BOY INCORPORATED, a      :
corporation authorized to do  :
business in the State of New  :
Jersey and RENEE GARDNER,     :
individually, LOU COX,        :
individually and BOB KEARNS,  :
individually,                 :
                              :
         Defendants.          :
-------------------------------x
```

OPINION

Alan L. Krumholz, Esq.
KRUMHOLZ DILLON PA
574 Summit Avenue
Suite 402
Jersey City, NJ 07306

    Attorneys for Plaintiff

John A. Ridley, Esq.
DRINKER, BIDDLE & REATH, LLP
500 Campus Drive
Florham Park, NJ 07932-1047

    Attorneys for Defendants

**DEBEVOISE, Senior District Judge**

### *PROCEDURAL POSTURE*

    Plaintiff, Edward Fishman ("Fishman") filed his Complaint

1

against Defendants, La-Z-Boy Incorporated ("LZB"), La-Z-Boy Furniture Galleries of Paramus, Inc. ("LZB Paramus"), Renee Gardner ("Gardner"), Lou Cox ("Cox"), and Bob Kearns ("Kearns"), in the Superior Court of New Jersey, Bergen County, on December 31, 2003, alleging: (1) unlawful retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"), and the New Jersey Family Leave Act, N.J.S.A. 34:16-1 et seq. ("NJFLA"); (2) tortious interference with Fishman's relationship with his employer against Gardner; (3) defamation against Cox and Kearns; and (4) tortious interference with Fishman's relationship with his employer against Cox and Kearns.  Defendants removed the matter pursuant to 28 U.S.C. §§ 1441, 1331, and 1367 to this court.  On October 25, 2004, Fishman sent Defendants a Stipulation of Dismissal for Counts 2 and 4, which have been signed by Defendants and filed with the court.  Additionally, the Stipulation of Dismissal removes Gardner from the case as a defendant.  Before this court, Defendants move for summary judgment on Counts 1 and 3.  As well, Fishman moves to Amend his Complaint and cross-moves for partial summary judgment against Defendants on the ground that they are estopped from arguing that the FMLA does not apply.  The court will grant Defendants' motion for summary judgement on Counts 1 and 3 of Fishman's Complaint and Amended Complaint.  Finally, the court will grant Fishman's motion to Amend the Complaint and will deny his cross-motion for

2

partial summary judgment on estoppel.[1]

## I. RELEVANT FACTS

The following facts, except as noted, are undisputed.
Defendant LZB is a Michigan corporation and the parent company of
its subsidiary, LZB Paramus.  LZB Paramus is also a Michigan
corporation and a wholly owned subsidiary of LZB.  LZB Paramus
owns two stores, one located on Route 4 East in Paramus, New
Jersey and the other located in Scarsdale, New York.  LZB Paramus
has never employed equal to or greater than 50 employees at
either location or both locations combined.  Co-defendant Kearns
is a resident of New York and the former General Manager for LZB
Paramus.[2]  Co-defendant Cox is a resident of New Jersey and the
Store Manager of LZB Paramus.  Co-defendant Gardner is a resident
of New Jersey and a Sales Associate in the LZB Paramus store.
Plaintiff Fishman is a resident of New Jersey and is a former
employee of LZB Paramus.  Amend. Complt. Count 1 ¶ 1.

In 2001, the LZB Paramus store opened with Kearns as the
General Manager.[3]  Fishman was hired as a Sales Associate in the

---

[1]Pursuant to the court's order on June 27, 2005 during oral
arguments, Fishman's motion to Amend the Complaint is granted.
The court will address Defendants' motion as if it were addressed
to the Amended Complaint.

[2]Due to a severe and debilitating accident, Kearns will not
be participating in this litigation.

[3]In October 2002, Kearns hired Cox to be the store manager
of LZB Paramus.

3

LZB Paramus store and began employment on September 17, 2001.
Pl. Dep. at 72:22-23; Pl. Facts ¶ 4.  During his employment,
Fishman satisfactorily performed his duties and was compensated
through sales commissions.  Amend Complt. Count 1 ¶ 2.  Fishman
worked approximately 45 hours per week with time off on Sunday
and Monday so he could spend two days straight caring for his
parents.  Pl. Facts ¶¶ 11,12.  Fishman contends that when he
returned to work his time off was moved to Friday, instead of
Monday, in an effort to punish him for taking family and medical
leave.  Pl. Facts at §38.

   LZB Paramus has a strict policy against employees
threatening other employees with violence.  Fishman was aware of
this policy and understood that a threat of violence towards
another employee would result in termination.  Pl. Dep. at 77:1-
10; Id. at 65:18-66:9.  In fact, on January 9, 2002, Fishman
received a disciplinary warning for engaging in a heated argument
with another Sales Associate, Dominique Cassagnol ("Cassagnol").
During the argument, Cassagnol threatened to punch Fishman in the
face.  When Kearns learned about the threat, he immediately
terminated Cassagnol.  For Fishman's part in the incident, he
received a written disciplinary warning and verbal counseling
from Kearns and Michael Gallo, the Sales Manager.  Kearns
informed Fishman that his behavior represented a "serious company
violation," and that "[He] will be subject to the appropriate

4

disciplinary action again up to + including termination if this type of incident happens again." Cox Cert. Ex. A.

On March 18, 2003, Fishman asked Kearns to grant him a leave of absence to care for his ill parents. Pl. Facts ¶¶ 14,15. Kearns granted Fishman the leave of absence and directed him to fill out forms in compliance with state and Federal medical and family leave laws. At the time, Kearns was unsure if LZB Paramus was required to provide its employees with family and medical leave pursuant to state and Federal statutes due to the company's small workforce.[4] Nonetheless, Kearns, without seeking legal advice, decided to grant unpaid leave pursuant to the NJFLA and the FMLA. Pl. Facts ¶ 15. On April 1, 2003, Fishman began his unpaid leave and was initially scheduled to return to work on June 1, 2003. Pl. Facts ¶ 15. However, on May 15, 2003, Fishman's father underwent major surgery prompting Fishman to request an extension of his leave for one month. Id. at 17. Accordingly, Fishman contacted Cox through a letter, followed by a telephone call. Id. at 19,20. During their telephone conversation, Cox granted the requested extension and asked to meet with Fishman at the end of June to discuss his return to work.[5] Id. At the June meeting, Cox and Fishman agreed that he

---

[4]According to Defendants, in March 2003, LZB Paramus's workforce consisted of 15 employees.

[5]Fishman points out that Cox initially ignored his letter and that when they finally met, Cox acted "very cold." Pl. Facts

5

would return to work on July 1st.[6]  Id. at 20.

Meanwhile, on May 13, 2003, Cox and Kearns hired Gardner as part of the store's "...plan of searching for *additional* sales personnel." (emphasis added).  Fishman claims that Gardner was hired purely as a replacement for his position while he was on family leave.  Pl. Facts ¶ 18.  However, this contention does not reflect the undisputed facts.  Throughout Fishman's absence, his name remained on the LZB Paramus sales roster in anticipation of his July 1st return.  As well, LZB Paramus employed the same number of active salespersons on the day Fishman returned from leave as on the day he initially took his leave.[7]  Moreover, Fishman is unable to figure out why Cox and Kearns would want to

_____

¶ 22.  Additionally, Fishman notes that Stephen Umile ("Umile"), another associate, informed him that LZB Paramus "replaced [him](Fishman) with a woman named Renee Gardner."  Pl. Facts ¶ 18.

[6]Defendants point out that when Fishman returned to work on July 1st, he took exactly 13 weeks of family leave.  Under both the NJFLA and FMLA, Fishman is only guaranteed 12 weeks of family leave.  Therefore, LZB Paramus, gratuitously, granted Fishman *more leave* than he would be allowed under either the state or Federal statutes.  See FMLA, 29 U.S.C. § 2601; NJFLA, N.J.S.A. 34:16-1 et seq.

[7]At the beginning of 2003, LZB Paramus employed seven active sales personnel.  The store added Sales Associate John Rogoz on January 27, 2003, increasing the total sales force to eight.  When Fishman took family leave on April 1, 2003, the total decreased to seven.  When Gardner was hired in May 2003, the total increased to eight.  Then, on June 28, 2003, three days before Fishman's July 1st return, LZB Paramus terminated Sales Associate Dan Raymond, decreasing the total to seven.  Finally, when Fishman returned to work on July 1st, the total number of active salespeople increased to eight.

replace him.  At Fishman's deposition, he explained:  "...I
haven't quite been able to figure it out (referring to why he
would be replaced).  But my feeling is that they felt – and
someone told me this from the store – that they felt I wasn't
coming back from my Leave of Absence.  And they felt they wanted
a replacement."  Pl. Dep. at 79:23 – 80:3.  Nevertheless, there
is no evidence in the record that either Cox or Kearns
affirmatively announced that they intended to replace Fishman.

     When Fishman returned to work on July 1st, he was upset and
threatened by Gardner's unfriendly behavior.  Pl. Facts ¶ 25.
According to Fishman, he *overheard* that Gardner would take bets
with other employees regarding whether or not he was wearing a
hairpiece.  Id. at 29.  As the Defendants point out, while it may
not have been dignified for Gardner to act in the manner in which
she did, she was not lying about the hairpiece.  Even Fishman, in
his deposition testimony, admitted to wearing a hairpiece while
working at LZB Paramus.  Additionally, the record points out that
Gardner prevented Fishman from using her desk, telephone, sales
book or computer because she observed Fishman regularly picking
his nose.  Gardner Dep. at 57:18-24; Pl. Facts ¶¶ 26, 32.
Defendants note that at least one other employee, Umile,
witnessed Fishman's unhygienic habit.  Umile Dep. at 118:18-21.
Fishman claims that the active harassment perpetrated by Gardner
toward him was implicitly condoned and supported by Cox and

7

Kearns by their inaction in remedying the problem.  Pl. Facts ¶ 37.

The incident culminating in Fishman's termination occurred on August 5, 2003 when Fishman needed to check an order for a customer approximately 10 minutes before the store closed.  Id. at 33.  Fishman decided to use Gardner's desk and computer because the other computers in the store were already shutdown for the evening.  Id.  Fishman knew that Gardner did not want him or anyone else using her desk.  In fact, Fishman testified that, "I was hoping she wouldn't see me." Pl. Dep. at 139:3.  When Gardner saw Fishman at her desk, she approached him offering to look up the information that he needed, and took her price book and computer away from him.  Pl. Facts ¶¶ 34,35.  Then Fishman, who was "fed up," grabbed the price book from Gardner and flung it across her desk, calling her a vulgar name.  Fishman testified:

> "You know what I did, I grabbed her book because she grabbed it from me, I grabbed it back from her and I threw it across her desk and I said 'You're being an asshole' and I walked away.  That's what happened.  *That's what got me fired*." Pl. Dep. at 139:10-14.  (emphasis added).

"Startled" by the incident, Gardner left the store without reporting what happened to her superiors because she "...didn't want to get anybody in trouble.  And...was willing to let things go..."  Gardner Dep. at 69:16-20, 71:17-20; Id. at 73:21-24.

The next day, Fishman, still upset, "bitterly" complained to

8

Cox about the incident.  Pl. Facts ¶ 37.  He informed Cox of the
same verison of the facts to which he testified above.  Pl. Dep.
at 148:7-10.  Cox then asked Gardner to explain what happened,
and she related to him her similar version of the events.[8]
Within two days of the incident, Cox also asked Umile, who was
also working at the time of the incident if he knew what
happened.  According to Umile, he was in the kitchen at the time
and did not see or hear any of the altercation between Fishman
and Gardner.  Then Cox informed Kearns of what happened between
the two, and he and Kearns decided to discuss the incident with
Fishman.  Fishman does not dispute that the incident occurred,
but rather contends that he acted in a "composed fashion" by
throwing the book and calling Gardner an "asshole."  Pl. Dep. at
146:20-22.  He contends that Gardner "deserved" being treated as
he treated her and that it was the management's fault for not
"tak[ing] care of this woman (referring to Gardner)."  Id. at
157:15.

---

[8]According to Gardner's version, Fishman approached her,
while she was sitting at her desk, asking to look at her price
book.  When Gardner refused, Fishman grabbed the book and threw
it across the desk at the floor next to her.  Pl. Facts ¶ 49.  As
well, Fishman points out that Gardner testified that she was
called a "bitch" instead of an "asshole."  Id. at 50.
Nevertheless, differences between the words "ass" and "bitch" are
immaterial.  Def. Response to Pl. Facts ¶ 70.  While use of
either word is equally deplorable, for the purposes of this
motion, the differences between these words do not evince
disputed material facts that withstand a motion for summary
judgment.  See FED. R. CIV. P. 56.

9

On August 12, 2003, Cox and Kearns met with Fishman in Cox's office and discussed the events of  August 5, 2003.  Pl. Facts ¶ 38.  After Fishman recounted the same rendition of the facts as he previously informed Cox of the day after the incident, Cox and Kearns agreed that his termination was appropriate.  They informed Fishman of his termination at the meeting, and explained to Fishman that his behavior on August 5, 2003 was, *inter alia*, sexual harassment.[9]  Pl. Facts ¶ 39.  According to  the Defendants, Cox and Kearns instructed Linda Anstett, the LZB Paramus controller at the time, to interview Gardner again.  In that interview, Gardner reconfirmed the facts that she had previously given regarding the incident.  In the Corrective Action Document, memorializing Fishman's termination, it states that LZB Paramus terminated him for "*harassment*, sexual harassment, [and] *aggressive behavior* toward Renee Gardner." (emphasis added).  Cox also characterized Fishman's behavior as "insulting, harassment, [and] aggressive behavior" in the document.

## II. DISCUSSION

---

[9]Gardner never characterized Fishman's behavior as "sexual harassment."  Pl. Facts ¶ 70.  Nevertheless, as Defendants point out, Gardner's subjective interpretation of the incident is immaterial.  Even if Gardner did not find the conduct to be sexual harassment, Fishman's conduct still reflects aggressive behavior that, according to company policy, would not be tolerated and was adequate grounds for termination of employment.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted if after drawing all inferences in favor of the moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c); Apalucci v. Agora Syndicate, Inc., 145 F.3d 630, 631 (3d Cir. 1998); Todaro v. Bowman, 872 F.2d 43, 46 (3d Cir. 1989); Davis v. Portline Transportes Maritime Int'l, 16 F.3d 532, 536 n. 3 (3d Cir. 1994); Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A genuine issue may exist if the record taken as a whole could lead a rational trier of fact to find for the party opposing summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Under FED. R. CIV. P. 56(c), the moving party bears the burden of pointing out to the district court an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The court will take the

11

nonmoving party's allegations of fact as true.  Goodman v. Mead
Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).  If the moving
party meets its burden, the opposition bears the burden of
"set[ting] forth specific facts showing that there is a genuine
issue for trial." FED. R. CIV. P. 56(e).

　　　If the court determines that there is no genuine issue of
material fact and that the movant is entitled to judgment as a
matter of law, then summary judgment may be granted.  See FED. R.
CIV. P. 56(e).

### B.  FMLA AND NJFLA

　　　Fishman alleges that LZB and LZB Paramus violated his rights
under both the FMLA and the NJFLA.  Fishman contends that: (1)
from approximately April 1, 2003 until July 1, 2003, he was
compelled to be absent from work due to a family and medical
crisis involving his ailing parents, and was granted either FMLA
or NJFLA leave by his employer; (2) upon his return from leave on
July 1, 2003, he became aware of the employment of Renee Gardner;
(3) from July 1, 2003 until August 12, 2003, he was harassed by
Gardner and her conduct was "approved and acquiesced" in by his
employer; (4) on August 12, 2003, he was terminated from his
employment on the basis of a pretextual claim of sexual
harassment which actually constituted a retaliation or
discrimination against him for taking FMLA or NJFLA leave; (5)
such conduct constitutes a violation of his protected rights; (6)

12

as a result of the actions of Defendants, he was caused to sustain a loss of employment, income and suffers from emotional and psychological distress, and continued interference with the prospect of future employment.  Amend Complt. Count 1 ¶¶ 3,4,5,6,7,8.

The FMLA creates two types of claims: "interference claims," in which an employee asserts that an employer denied or otherwise interfered with his or her substantive rights under the FMLA, and "retaliation claims," in which an employee asserts that an employer discriminated against the employee because he or she engaged in activity protected by the FMLA. FMLA, § 105(a)(1, 2), 29 U.S.C. § 2615(a)(1, 2); 29 C.F.R. § 825.220(c); See King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999).  In order for Fishman to be successful in his FMLA claim, he must allege that: (1) he engaged in a statutorily *protected* activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the *protected* activity.[10]  FMLA,

---

[10] The elements of a claim under NJFLA are similar to those brought under the FMLA.  In DePalma v. Building Inspection Underwriters, 350 N.J.Super. 195, 213, 794 A.2d 848 (N.J. Super. A.D. 2002), the Superior Court of New Jersey, Appellate Division, held, "The elements of a cause of action under the Family Leave Act therefore are: (1) plaintiff was employed by defendant; (2) plaintiff was performing satisfactorily; (3) a qualifying member of plaintiff's family was seriously injured; (4) plaintiff took or sought to take leave from his employment to care for his injured relative; and (5) plaintiff suffered an adverse employment action as a result."

§ 105(a)(1), 29 U.S.C. § 2615(a)(1); See Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).  It is undisputed that Fishman took family and medical leave and that LZB Paramus terminated his employment on August 12, 2003.  Amend Complt. Count 1 ¶ 6.  However, before the court addresses the individual elements of a claim for unlawful retaliation under the FMLA or NJFLA, it must determine whether or not Fishman's activity is protected by either state or Federal statutes.  As Defendants point out, it is axiomatic that employees who are not covered by the protections of either the FMLA or the NJFLA do not have a cause of action under either statute.  Def. Br. at 18. Defendants are correct.  Here, Fishman cannot make out the critical threshold element of a claim under the FMLA or the NJFLA because he cannot show that he engaged in a protected activity. See Walker v. Elmore County Bd. of Educ., 379 F.3d 1249, 1253 (11th Cir. 2004) ("...hold[ing] that the statute does not protect an attempt to exercise a right that is not provided by FMLA..."); Darby v. Bratch, 287 F.3d 673, 679 (8th Cir. 2002) ("To establish a prima facie case of FMLA retaliation, an employee must show that she engaged in activity protected under the Act....").  It is therefore appropriate for the court to grant summary judgment to Defendants on claims that do not fall within the purview of the statute.  See Briody v. American General Finance Co., 1999 WL 387269 (E.D.Pa. 1999) (summary judgment granted on retaliation

14

claim where plaintiff was not an eligible employee under the FMLA); <u>Wemmitt-Pauk v. Beech Mountain Club</u>, 140 F.Supp.2d 571, 581 (W.D.N.C. 2001) (summary judgment granted because the "Plaintiff never engaged in a 'protected activity' under the FMLA; that is, she was not eligible for FMLA leave.")

Eligibility requirements include "an employee who has been employed...for at least 12 months by the employer with respect to whom leave is requested under section 2612 of [the] title; and...for at least 1,250 hours of service with such employer during the previous 12-month period."  FMLA, 29 <u>U.S.C.</u> § 2611(2)(A)(i) and (ii); <u>See also</u> N.J.S.A. 34:11B-4 ("An employee of an employer in this State subject to the provisions of this act shall be entitled to a family leave of 12 weeks in any 24-month period....").  However, the statute excludes from the "eligible employee" category "...any employee of an employer who is employed at a worksite at which such employer employs *less than 50 employees* if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." FMLA, 29 <u>U.S.C.</u> § 2611(2)(B)(ii). (emphasis added).  The NJFLA provides a similar exception under N.J.S.A. 34:11B-3(f)(3).  <u>See</u> <u>Essex Crane Rental Corp. v. Director, Division on Civil Rights</u>, 294 N.J.Super. 101, 105, 106, 682 A.2d 750 (N.J.Super. A.D. 1996) ("The Act by its terms applies to employers with 50 or more employees...The only limit the Legislature placed on the Act's

15

scope is the requirement that an employer have at least 50 employees.")

Fishman argues that LZB and LZB Paramus should be treated as an integrated employer in order to satisfy the numerical requirement of employing equal to or greater than 50 employees stipulated in the statute.  The Court of Appeals for the Third Circuit has not addressed the integrated employer test in relation to protections under 29 C.F.R. § 825.104(c)(2), which states, "Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the 'integrated employer' test.  Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility."  In the context of a Title VII claim the Court outlined a three-prong approach for determining when multiple entities should be considered integrated Nesbit v. Gears Unlimited, Inc., 347 F.3d 72 (3d Cir. 2003).[11]

First, in order to establish a *prima facie* case, a plaintiff must prove that the defendants intentionally split the number of employees into multiple business entities in order to avoid liability under the statute; this can be determined by evaluating the following factors:

_____

[11]Defendants argue that it is reasonable to infer that the Court of Appeals would apply the same three-prong test used for Title VII claims in FMLA cases.

16

(1) lack of a reasonable business justification, (2) whether the business split was one that, as an operational matter, would more sensibly be contained within a single business entity (e.g., the two companies make the same product or inputs for the same product); and (3) statements from those familiar with the industry suggesting that the company was split into multiple entities to evade [the statute]. 347 F.3d at 86.

Second, the court addressed the relationship between the parent and subsidiary:

When the companies sought to be aggregated for [statutory] purposes are in a parent-subsidiary relationship, we shall deem a parent and subsidiary a single employer when the parent has directed the subsidiary to perform the allegedly discriminatory act in question. By directing such an act, the parent disregards the separate corporate existence of the subsidiary and thus forfeits the right to be treated as a separate entity for [statutory] purposes. Moreover, in such a situation the parent itself has committed the act in question and thus should share responsibility with the subsidiary. 347 F.3d at 86.

Third, the court set forth relevant factors in determining whether or not to integrate the number of employees between parent and subsidiary:

In determining when substantively to consolidate two entities for [statutory] purposes, focus rests on degree of operational rather than financial entanglement, i.e., whether operations of companies are so united that nominal employees of one company are treated interchangeably with those of another; relevant operational factors include (1) degree of unity between entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as single company such that third parties dealt with them as one unit, (3) whether parent company covers salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other. 347 F.3d at 87.

17

Here, LZB Paramus does not satisfy the three-prong requirements set forth in the "integrated employer" test.  First, there is substantial justification for LZB Paramus's corporate independence because of several business, tax and liability advantages.  Stout. Cert. ¶¶ 2-6.  Second, the decision to fire Fishman was made by Cox and Kearns, with no input from LZB, the parent corporation.  Cox Supp. Cert. ¶ 2.  Third, LZB and LZB Paramus are not operationally entangled.  Cox and Kearns are both employees of LZB Paramus and manage the daily operations of the store, including, *inter alia,* maintenance and rent.  Id.  As well, Cox and Kearns have full authority to hire or fire employees and may do so without any input from LZB.  Id.  Moreover, LZB Paramus's payroll, taxes, books, and records are kept independent of LZB.  Accordingly, as Defendants point out, "[LZB] Paramus and [LZB] stand in an ordinary parent-subsidiary corporate relationship which should not be pierced for purposes of the FMLA. [LZB] Paramus simply falls below the statute's 50-employee threshold."[12]  Defendants are correct.

Since Defendants established that LZB Paramus does not employ 50 or more employees at its Paramus, New Jersey

---

[12]Defendants also correctly point out that under NJFLA, LZB Paramus does not satisfy the requirement of employing at least 50 employees.  As well, New Jersey courts have never applied an integrated employer test to the NJFLA.

18

location,[13] it is not necessary to analyze whether or not Fishman
was retaliated against in taking leave under the FMLA or the
NJFLA.  Even making all reasonable inferences in favor of
Fishman, LZB Paramus falls outside the ambit of the statute
because Fishman cannot establish that he was a protected
employee.  See Thoele v. United States Postal Service, 996
F.Supp. 818, 821 n1 (N.D.Ill. 1998) ("[Plaintiff] was not
protected by the FMLA when his leave was taken. Accordingly he
cannot make out a retaliation claim under the FMLA.").
Therefore, Defendants' motion for summary judgment dismissing
this claim with prejudice will be granted.

### C. FISHMAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ESTOPPEL

Fishman cross-moves for partial summary judgment on
liability estoppel.  Fishman argues that LZB Paramus is estopped
from arguing the inapplicability of the FMLA because LZB Paramus
availed itself of the statute.  This argument has no merit.
Neither Fishman nor the Defendants have the authority to expand

---

[13]According to the record, LZB Paramus only employed 14
employees at the time Fishman was terminated in August 2003.  Cox
Supp. Cert ¶ 10.  As well, in August 2003, LZB Paramus did not
employ other employees within 75 miles of the store.  In 2004,
LZB Paramus opened another store in Scarsdale, New York, which
currently employs approximately 12 employees.  Nevertheless,
aggregating the number of employees at both locations still does
not satisfy the numerical requirements of employing equal to or
greater than 50 employees within 75 miles under the FMLA or at
least 50 employees under the NJFLA.  As well, none of the
employees employed by LZB Paramus are employed by LZB.  Gikas
Cert. ¶ 3.

19

the scope of a Congressional statute.  See Coen v. Sybron Dental
Specialities, 1 Fed.Appx. 386 (6th Cir. 2001) (Court of Appeals
for the Sixth Circuit reversed the district court's holding that
although the employer technically did not come within the
definition of an "employer" under the Act, the FMLA applied
because the employer voluntarily agreed to abide by its terms).
Therefore, the court will deny Fishman's motion for partial
summary judgment on liability estoppel given the court's ruling
that the FMLA and the NJFLA are inapplicable.

### D. DEFAMATION CLAIMS

    Fishman alleges that:  (1) during August 2003, the
individual defendants Cox and Kearns were employees at the LZB
Paramus's premises in Paramus, New Jersey; (2) Cox and Kearns
defamed Fishman by informing co-employee, Umile, that Fishman had
inflicted sexual harassment upon Gardner during the course of
business activities and was terminated as a result of this
conduct; (3) the statements made were false and defamatory
because neither Cox nor Kearns had a reasonable basis for
believing the truth of such allegations and knowing that
Fishman's reputation would be injured; (4) the conduct was
defamation; and (5) as a result of the defamation, Fishman was
caused to sustain a loss of employment, income and suffers from
emotional and psychological distress, and continued interference
with the prospect of future employment.  Amend Complt. Count 3 ¶¶

20

1,2,3,4,5.

Under New Jersey law, a statement is defamatory when it "is false and 'injurious to the reputation of another' or exposes another person to 'hatred, contempt or ridicule' or subjects another person to 'a loss of the good will and confidence' in which he or she is held by others." <u>Feggans v. Billington</u>,291 N.J.Super. 382, 390, 677 A.2d 771 (N.J.Super. A.D. 1996) (quoting <u>Romaine v. Kallinger</u>, 109 N.J. 282, 289, 537 A.2d 284 (1988)). In order to prove defamation, Fishman must establish that Cox or Kearns made:  (1) a defamatory statement of fact; (2) a statement that concerned Fishman; (3) a statement which was false; and (4) a statement which was communicated to a third party.  <u>Bainhauer v. Manoukian</u>, 215 N.J.Super. 9, 31-34, 42 n13, 520 A.2d 1154 (N.J.Super. A.D. 1987).  However, "[i]n certain situations...the public interest presents the 'vital counter policy' that persons should be permitted to communicate without fear of a defamation action." <u>Gallo v. Princeton University</u> 281 N.J.Super. 134, 142, 656 A.2d 1267 (N.J.Super. A.D. 1995) (quoting <u>Fees v. Trow</u>, 105 N.J. 330, 336, 521 A.2d 824 (1987)).  Further, "[t]he common law has accommodated these countervailing policies 'by recognizing that some otherwise defamatory statements should be 'privileged,' i.e., that their publication does not impose liability upon the publisher.'" <u>Gallo</u> 281 N.J.Super. at 142 (quoting <u>Dairy Stores, Inc. v. Sentinel Publishing Co.</u>, 104 N.J. 125, 136, 516 A.2d 220

21

(1986)).

Defendants argue that statements made by either Cox or Kearns to Umile, enjoy a qualified privilege.  The court in Gallo addressed qualified privileges, explaining that:

> A qualified privilege for the protection of the publisher's own interest will be recognized "if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the publisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest."  Restatement (Second) of Torts § 594....Even if a qualified privilege exists, a party may lose the privilege by "excessive publication, that is, by publishing defamatory matter without a reasonable belief 'that the publication is a proper means of communicating the defamatory matter to the person to whom its publication is privileged.'"  Bainhauer 215 N.J.Super. at 43 (quoting Restatement (Second) of Torts § 604).

In the instant matter, Fishman contends that the statements made by Cox to Umile about why Fishman was terminated were defamatory and constituted "excessive publication."  Amend Complt. Count 3 ¶ 2; Pl. Br. at 36.  However, a single statement made to Umile within the privacy of the manager's office can hardly be considered "excessive publication."  See Dopp v. Fairfax Consultants, Ltd., 771 F.Supp. 494, 497 (D. Puerto Rico 1990) ("publication to only one person cannot be considered anything more than 'de minimus.'").  In addition, the statements made by Cox to Umile were in fact true, Fishman was fired for, inter alia, "sexual harassment."  Therefore, Cox and Kearns are protected by their qualified privilege because they did not

excessively publish the statements.  See Momah v. Albert Einstein Medical Ctr., 978 F.Supp. 621, 634 (E.D.Pa. 1997) (An employer's privilege may be lost if the information is "disseminated beyond the circle of those who reasonably need to know....").  Certainly a single communication to one employee regarding why another employee was terminated does not pierce Cox's and Kearn's qualified privilege.  In fact, it is perfectly permissible for a manager to communicate with current employees about the reasons why another employee was terminated.  See Gallo 281 N.J.Super. at 143; See also Stockley v. AT & T Information Systems, Inc., 687 F.Supp. 764 (E.D.N.Y. 1988) (court held employer enjoyed qualified immunity for published statements after an employee, who was being investigated for sexual harassment, sued the employer for defamation).  Therefore, Fishman's claim against Cox and Kearns for defamation must fail.

### III. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgement on the remaining counts of Fishman's Amended Complaint will be GRANTED.  The court will also GRANT Fishman's motion to Amend his Complaint and will DENY his cross-motion for partial summary judgment on estoppel.  An appropriate order shall be entered.

Dated: August 16, 2005      ‗      /s/ Dickinson R. Debevoise
                                   Dickinson R. Debevoise, U.S.S.D.J.

23